UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| Yoandy Fernandez Morales,<br><br>    Plaintiff<br><br>v.<br><br>Sheddy, et al.,<br><br>    Defendants | Case No. 2:22-cv-00782-JAD-DJA<br><br>**Order Screening Complaint**<br><br>[ECF No. 1-1] |

Plaintiff Yoandy Fernandez Morales brings this civil-rights action under 42 U.S.C. § 1983, claiming that his Eighth Amendment rights were violated when Defendants Correctional Officer ("C/O") Sheddy and Caseworker Steven compelled him to perform his porter duties without protective gear and when Defendants Dr. Agustin, Warden Howell, Warden Hutchings, Assistant Warden Scally, and Medical Director Minev deprived him of reasonable access to appropriate medical care. Because Morales applies to proceed *in forma pauperis*,[1] I screen his complaint under 28 U.S.C. § 1915A. I find that he has pled an Eighth Amendment unsafe-prison-conditions claim against Defendant C/O Sheddy and an Eighth Amendment deliberate-indifference-to-serious-medical-needs claim against Defendants Warden Howell, Warden Hutchings, Assistant Warden Scally, and Medical Director Minev, so I allow these claims to proceed, and I stay this action to give the plaintiff and the remaining defendants an opportunity to settle their dispute.

---

[1] ECF No. 1.

## I. Screening standard

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or an officer or employee of a governmental entity.[2] In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous or malicious, or that fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief.[3] All or part of the complaint may be dismissed *sua sponte* if the prisoner's claims lack an arguable basis in law or fact. This includes claims based on legal conclusions that are untenable, like claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist, as well as claims based on fanciful factual allegations or fantastic or delusional scenarios.[4]

Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief.[5] In making this determination, the court takes all allegations of material fact as true and construes them in the light most favorable to the plaintiff.[6] Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers,[7] but a plaintiff must provide more than mere labels and conclusions.[8] "While legal conclusions can provide the framework of a

---

[2] *See* 28 U.S.C. § 1915A(a).

[3] *See* 28 U.S.C. § 1915A(b)(1)(2).

[4] *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

[5] *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

[6] *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996).

[7] *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *see also Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (recognizing that pro se pleadings must be liberally construed).

[8] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

complaint, they must be supported with factual allegations."[9]  "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[10]

## II.     Screening Morales's complaint

In his complaint, the plaintiff sues C/O Sheddy, Caseworker Steven, Dr. Agustin, Warden Howell, Warden Hutchings, Assistant Warden Scally, and Medical Director Minev for events that he alleges took place while he was incarcerated at Southern Desert Correctional Center ("SDCC").[11]  He brings two claims and seeks injunctive and monetary relief.[12]

In his first claim, plaintiff alleges that on June 4, 2020, there were no gloves or protective gear provided to him so that he could safely use chemicals to perform his cleaning duties as a porter in Unit 4 of SDCC.  He notified Defendant C/O Sheddy, the Unit 4 officer in charge that day, about the issue, and Sheddy responded that he did not care, there were no gloves available, and plaintiff needed to work without gloves unless he wanted to be fired.  Plaintiff worked for five days without gloves, causing him to develop a severe rash "that spread all over his body," swollen lymph nodes, an ear infection, and eventual hearing loss.  Plaintiff submitted kites on June 9, 2020, and June 16, 2020, notifying Defendant Caseworker Steven about the issue, but Steven did nothing.  Plaintiff then filed an informal grievance, and Defendant Assistant Warden Scally denied it, stating that there was "no evidence to support [the] claim" that plaintiff's medical issues were related to his porter duties.  Finally, plaintiff notified Defendants Warden Howell and Warden Hutchings and filed first and second level grievances.  Because these

---

[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).
[10] *Id.*
[11] ECF No. 1-1 at 1–4.
[12] *Id*. at 4–19, 23.

grievances were unreasonably denied on timeliness grounds, plaintiff unsuccessfully went through the entire grievance process a second time for exhaustion purposes.[13]

In his second claim, plaintiff alleges that on June 9, 2020, he submitted a medical kite regarding the rash on his hands and back of his ears that developed due to the lack of gloves discussed in the first claim. In response, SDCC's medical staff provided their standard "stamped filed response" per Defendant Medical Director Minev's policy, instructing plaintiff that he had merely been placed on a list to be seen and needed to wait. Plaintiff had no medical attention for more than a month, causing his skin infection to spread to the inside of his right ear which eventually caused hearing loss. Plaintiff submitted several more kites, which were ignored, and he then submitted three emergency grievances. Finally, on July 11, 2020, plaintiff saw Defendant Dr. Agustin, who diagnosed him with otitis media and right-ear hearing loss. Dr. Agustin prescribed antibiotics and referred plaintiff "to see a specialist otorhinolaryngologist immediately." Plaintiff submitted three medical requests over the course of the next few weeks because his ear infection, inflammation, and hearing loss persisted. Plaintiff saw Dr. Agustin again on August 4, 2020, and he increased plaintiff's antibiotics and again referred plaintiff to a specialist. Plaintiff finally saw a specialist, Dr. Scott Manthei, three months later, and Dr. Manthei conducted a hearing test and determined that plaintiff suffered from right-ear hearing loss. Dr. Manthei indicated that plaintiff needed to come back for further testing and examination. However, as of the date of the filing of his complaint, more than a year and a half later, plaintiff has not been further treated or evaluated. Plaintiff submitted several requests for help to Defendants Howell, Hutchings, and Minev during this time, but his requests went unanswered for more than four months until Defendant Assistant Warden Scally finally

---

[13] *Id.* at 5–10.

responded, denying his requests. Plaintiff filed a second-level grievance on April 5, 2021, but it was denied.[14]

Based on these allegations, Plaintiff asserts an Eighth Amendment claim for failure to provide safe conditions against Defendants C/O Sheddy and Caseworker Steven and an Eighth Amendment claim for deliberate indifference to serious medical needs against Defendants Dr. Agustin, Warden Howell, Warden Hutchings, Assistant Warden Scally, and Medical Director Minev.[15]

### A.     Eighth Amendment: Unsafe Prison Conditions

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones.[16] The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."[17] The Eighth Amendment imposes duties on prison officials to take reasonable measures to guarantee the safety of inmates and to ensure that inmates receive adequate food, clothing, shelter, and medical care.[18]

To establish violations of these duties, the prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety.[19] To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a

---

[14] *Id*. at 12–19.
[15] *Id.* at 5, 12.
[16] *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).
[17] *Helling v. McKinney*, 509 U.S. 25, 31 (1993).
[18] *Farmer*, 511 U.S. at 832.
[19] *Id*. at 834.

substantial risk of serious harm exists, and [the official] must also draw the inference."[20] Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed.[21]

I find that plaintiff has sufficiently pled a colorable Eighth Amendment unsafe-prisons-conditions claim against Defendant C/O Sheddy to survive screening. Plaintiff alleges that he was forced to complete his porter duties—including using chemicals and other cleaning products—without the protection of gloves for five days, and plaintiff "immediately notified" Sheddy about the lack of gloves. However, plaintiff alleges, Sheddy intentionally disregarded the substantial risk of serious harm that plaintiff faced by being forced to use chemical products for several days without the protection of gloves when he told plaintiff that he did not care and to continue working without gloves unless he wanted to be fired. As a result, plaintiff developed a rash and infection from the chemicals and eventually suffered hearing loss. This claim will proceed against Defendant C/O Sheddy.

However, because plaintiff alleges that he did not notify Defendant Caseworker Steven until June 9, 2020,[22] the fifth and final day that plaintiff was forced to work without gloves, plaintiff fails to allege that Defendant Caseworker Steven intentionally disregarded his safety because the serious threat to safety was concurrently eliminated.[23] So I dismiss Defendant Caseworker Steven from this case without prejudice.

---

[20] *Id*. at 837.

[21] *Id*. at 843.

[22] A review of plaintiff's exhibits shows that the kite submitted on June 9, 2020, was assigned to medical, not to Defendant Caseworker Steven, ECF No. 1-1 at 61, and plaintiff did not submit a kite directly to Steven until June 16, 2020—seven days after he was last forced to work without gloves. *See id*. at 63.

[23] Plaintiff alternatively alleges that Steven knew about the lack of gloves because two correctional officers knew about the lack of supply of gloves and "likely" informed Steven about

6

**B.      Eighth Amendment: Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'"[24] A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate.[25] "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference."[26]

To establish the objective prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."[27] Serious medical needs include those "that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."[28]

To satisfy the subjective deliberate-indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm

---

the issue. ECF No. 1-1 at 11. This allegation that Steven was "likely" told about the lack of gloves is insufficient to demonstrate his personal knowledge. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (stating that a defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant").

[24] *Estelle v. Gamble*, 429 U.S. 97, 102 (1976).

[25] *Farmer*, 511 U.S. at 828.

[26] *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 176, 1082–83 (9th Cir. 2014).

[27] *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted).

[28] *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

caused by the indifference."[29]  "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care."[30]  A prison official may only be held liable if he or she "knows of and disregards an excessive risk to inmate health and safety."[31]  When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury.[32]

Plaintiff has not sufficiently pled a colorable Eighth Amendment deliberate-indifference-to-serious-medical-needs claim against Defendant Dr. Agustin to survive screening.  Liberally construing plaintiff's allegations, Dr. Agustin knew about plaintiff's infection and hearing loss issues because he prescribed him antibiotics to treat his infection and referred plaintiff to a specialist on July 11, 2020.  Importantly, however, despite alleging that he continually informed "SDCC medical" about his medical issues, plaintiff fails to specifically allege that Dr. Agustin intentionally disregarded his serious medical needs before or after his July 11, 2020, appointment.  For example, plaintiff fails to allege that Dr. Agustin played a role in plaintiff not being scheduled to be seen at the prison until July 11, 2020; plaintiff not being scheduled to be seen for a follow-up at the prison until August 4, 2020; plaintiff's referral to the specialist not being timely approved; plaintiff not being scheduled to be seen and transported to the specialist until November 2020; and plaintiff not being scheduled to be seen by the specialist for a follow-up evaluation.  So I dismiss Dr. Agustin from this case without prejudice.

---

[29] *Jett*, 439 F.3d at 1096.

[30] *Id.* (internal quotations omitted).

[31] *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).

[32] *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

Contrarily, I find that plaintiff has sufficiently pled a colorable Eighth Amendment deliberate-indifference-to-serious-medical-needs claim against Defendants Warden Howell, Warden Hutchings, Assistant Warden Scally, and Medical Director Minev to survive screening. Liberally construed, plaintiff has alleged that he notified Wardens Howell and Hutchings—and they in turn notified Assistant Warden Scally, who was assigned to address the grievances— about his need for medical treatment. Despite these notices, based on the allegations, these defendants intentionally ignored plaintiff's requests for four months until they finally denied the grievances, causing plaintiff's infection to go untreated for too long resulting in the loss of hearing in his right ear.[33] Similarly, plaintiff notified Medical Director Minev on three occasions about his need for medical treatment. Despite these notices, based on the allegations, Minev intentionally disregarded plaintiff's urgent notices and merely provided his "stamped response" that plaintiff had been placed on a waiting list and needed to wait. As a result, plaintiff's infection went untreated for too long, causing the loss of hearing in his right ear.

In addition to alleging that Minev is liable because he was personally notified of the need for medical treatment, plaintiff alleges that Minev is liable as a supervisor due to his "unreasonable [and] egregiously erroneous" policy of simply stamping kites with an instruction that the inmate has been added to a list and needs to wait to be seen. Plaintiff alleges that this policy fails to account for emergency issues like his and resulted in his infection being left untreated for too long. Based on plaintiff's allegations, Minev implemented a standard "stamped

---

[33] *See Jett*, 439 F.3d at 1098 (holding that a supervisor who is informed of an alleged constitutional violation, *e.g.*, by reviewing an inmate's administrative grievance, may be liable if he failed to remedy it); *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) ("[A] plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates.").

9

filed response" to medical grievances that did not allow medical staff the discretion to expedite treatment in necessary cases. Therefore, for the purposes of screening, I find that plaintiff has sufficiently pled a colorable claim against Minev based on supervisory liability.[34]

In sum, plaintiff's Eighth Amendment deliberate-indifference-to-serious-medical-needs claim will proceed against Defendants Medical Director Minev (based on both his personal participation and supervisory liability), and Warden Howell, Warden Hutchings, and Assistant Warden Scally.

## Conclusion

IT IS THEREFORE ORDERED that the Clerk of the Court is directed to

- **FILE** the complaint (ECF No. 1-1),
- **SEND** Plaintiff a courtesy copy of the complaint (ECF No. 1-1), and
- **ADD** the Nevada Department of Corrections to the docket as an Interested Party and **ELECTRONICALLY SERVE** a copy of this order and a copy the complaint (ECF No. 1-1) on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the interested party on the docket. This does not indicate acceptance of service.

IT IS FURTHER ORDERED that:

- The claims against Defendants Caseworker Steven and Dr. Agustin are DISMISSED without prejudice, and the Clerk of Court is directed to TERMINATE them as parties in this action;

---

[34] *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) ("Supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'").

- The Eighth Amendment unsafe-prison-conditions claim against Defendant C/O Sheddy MAY PROCEED; and
- The Eighth Amendment deliberate-indifference-to-serious-medical-needs claim against Defendants Medical Director Minev (based on both his personal participation and supervisory liability), Warden Howell, Warden Hutchings, and Assistant Warden Scally MAY PROCEED.

Given the nature of the claim that the court has permitted to proceed, IT IS FURTHER ORDERED that **this action is STAYED for 90 days** to allow the plaintiff and the defendants an opportunity to settle their dispute before the filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay period, no other pleadings or papers may be filed in this case, and the parties may not engage in any discovery. **I refer this case to the Court's Inmate Early Mediation Program** and will enter a subsequent order. Regardless, by the 90th day following this order, the Office of the Attorney General must file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered before the end of the stay. If the parties proceed with this action, the court will then issue an order setting a date for defendants to file an answer or other response. Following the filing of an answer, the court will issue a scheduling order setting discovery and dispositive motion deadlines. I defer decision on the application to proceed *in forma pauperis* [ECF No. 1] until after the mediation process. If plaintiff is allowed to proceed *in forma pauperis,* he will be permitted to pay the fee in installments from his prison trust account; if not, the full $350 statutory filing fee for a civil action plus the $52 administrative filing fee, for a total of $402, will be due immediately.

"Settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve plaintiff's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

If any party desires to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation" within 21 days of this order. The responding party will have seven days to file a response, and no reply may be filed. Thereafter, the court will issue an order, set the matter for hearing, or both.

If the plaintiff needs an interpreter to participate in the mediation program, he must file a notice identifying the interpretation language and the need for the interpreter within 30 days from the date of this order.

Dated: January 6, 2023

_____
U.S. District Judge Jennifer A. Dorsey

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Yoandy Fernandez Morales,<br><br>    Plaintiff<br>v.<br><br>Sheddy, et al.,<br><br>    Defendants | Case No. 2:22-cv-00782-JAD-DJA<br><br>**Report of Attorney General<br>Re: Results of 90-Day Stay** |

**NOTE: This form must be filed only by the Office of the Attorney General.
The inmate plaintiff MUST NOT file this form.**

On January 6, 2023, the Court issued its screening order stating that it had conducted its screening under 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies with that order.

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

    ____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

    ____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

13

\_\_\_\_  No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

\_\_\_\_  No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

\_\_\_\_  No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

\_\_\_\_  None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

\* \* \* \* \*

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

\_\_\_\_  The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

\_\_\_\_  The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

\_\_\_\_  The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

\_\_\_\_  None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, \_\_\_\_\_ by:

Signature: _____

Name: _____

Phone #: _____

Email: _____